# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NORTHEASTERN DIVISION

MAKEBA LITTLE      )
           )
     **Plaintiff,**    )
           )
  **v.**         )   **No. 2:20-cv-0017**
           )
**CROSSVILLE, INC.**     )
           )
     **Defendant.**   )

## MEMORANDUM OPINION

When ruling on a motion for summary judgment, the Court's task – guided by Rule 56 – is supposed to be a relatively straightforward matter.   The Court is required to look at the "materials in the record," and determine whether the movant has "shown that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a number of reasons, however, that task is not so simple in this case because of unnecessary hurdles the parties have erected in relation to Defendant's Motion for Summary Judgment on Plaintiff's claims under Title VII (42 U.S.C. § 2000e *et seq*.) and Section 1981 (42 U.S.C. § 1981). Those same hurdles do not exist in relation to Plaintiff's Family Medical Leave Act, 29 U.S.C. § 2901, et seq. ("FMLA") claim, but the filings relating thereto present their own set of problems.

### I.

The Court begins with Plaintiff's race-based claims and the first hurdle.  Plaintiff has filed a "Motion to Strike Defendant's Statement of Material Undisputed Facts and its Reply Brief, Unreported Cases and Reply to Statement of Material Disputed Facts and its Reply Brief, Unreported Cases and Reply to Plaintiff's Statement of Material Disputed Facts for Trial, and for a Finding that Plaintiff's Claim for Hostile Work Environment Survives." (Doc. No. 41).  By way of this motion,

Plaintiff seeks to strike all of those filings on the grounds that Defendant did not request leave of Court before it filed a motion for partial summary judgment.

At first blush, Plaintiff's motion appears to be a nonstarter, notwithstanding its impressive title. After all, Defendant begins its Motion for Summary Judgment by "mov[ing] the Court for an Order granting summary judgment as there is no genuine dispute as to any material fact and, therefore, CHA[1] is entitled to judgment as a matter of law." (Doc. No. 26 at 1). However, Defendant then identifies the scope of its Motion by asserting that: (1) "Plaintiff cannot establish a prima facie claim of race discrimination or retaliation under Title VII or Section 1981a"; (2) "Plaintiff cannot establish a prima facie claim that Crossville, Inc. violated her Family and Medical Leave Act rights"; and (3) "Plaintiff cannot establish a prima facie claim of constructive discharge." (Id.). Nowhere in the motion does Defendant mention harassment or a hostile work environment. To the extent the hostile work environment claim intended to be subsumed by Defendant's reference to "racial discrimination," this presents the second hurdle.

In its accompanying 19-page Memorandum, Defendant fails to squarely address Plaintiff's harassment/hostile work environment claim. In fact, those terms are mentioned only three times and then only in passing. As for Plaintiff's racial discrimination claims under Title VII generally, Defendant submits that they all fail because she was not constructively discharged and hence cannot show an adverse employment action. This is problematic for Defendant because the Supreme Court has held that an employee may bring a hostile work environment claim even in the absence of a tangible employment action. See Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998). Of course, the employer may still prevail by establishing the affirmative defense that it exercised reasonable

---

[1] It is unclear what "CHA" means. Likely it is an acronym, but Defendant is "Crossville, Inc."

2

care to prevent and correct any harassing behavior, id., but that is not what Defendant argued in its

opening brief. Furthermore, if Defendant thought that its arguments about constructive discharge

would carry the day, it was mistaken because constructive discharge "'requires the plaintiff to

demonstrate a discriminatory work environment even more egregious than the high standard for a

hostile work environment.'" Laster v. City of Kalamazoo, 746 F.3d 714, 728 (6th Cir. 2014)

(quoting, E.E.O.C. v. Univ. of Chicago Hosps., 276 F.3d 326, 332 (7th Cir. 2002)).

Perhaps recognizing its omission of any substantive arguments on the harassment issue,

Defendant spends more than one-half of its reply brief[2] arguing that Plaintiff was not subjected to

a hostile work environment based upon her race. This comes too late. See Scottsdale Ins. Co. v.

Flowers, 513 F.3d 546, 553 (6th Cir. 2008) ("Raising the issue for the first time in a reply brief does

not suffice; reply briefs reply to arguments made in the response brief—they do not provide the

moving party with a new opportunity to present yet another issue for the court's consideration.");

Palazzo v. Harvey, 380 F. Supp. 3d 723, 730 (M.D. Tenn. 2019) (internal citations omitted)

("Generally speaking, arguments raised for the first time in reply briefs are waived, and this applies

both on appeal and to summary judgment motions filed in the trial court[.]")

The third and fourth hurdles are presented by the parties' statements of undisputed material

facts, the likes of which the Court has never seen before. To begin, Defendant has filed 118

paragraphs of such facts. This is not an overly-large number, but some of those facts simply are not

material to any of the claims or arguments presented. For example, Defendant spends five

paragraphs telling the Court that (1) Plaintiff and her minor son moved to Crossville in 2016, after

---

[2] The font, margins and/or spacing of this document appear to have been modified in order to keep within the page limitations of the Local Rules. The Court disapproves of such trickery.

Plaintiff divorced her first husband; (2) her fiancé was incarcerated in Bedford County, Tennessee, but she does not know why; and (3) Plaintiff does not know when her fiancé will be released, but that she moved to be closer to him. (Doc. No. 28, SOF ¶¶ 5-9). Defendant spends the next few paragraphs discussing how Plaintiff worked for Express Personnel Professionals (a temp agency), but wrongly claimed that she was placed at CoLinx in Crossville when, in fact, she was placed at Quality Service Group in Sparta some 31 miles from her home. Wherever it was, Plaintiff only worked for two partial weeks before going to work for Defendant. (Id. ¶¶ 10-13).

Plaintiff's response to these statements of supposedly undisputed material facts does not help matters. That response contains 58 footnotes, another first for the Court. Plaintiff begins by asserting that "Defendant makes numerous careless citations and incorrect recitations of testimony given," noting "[f]or example, [that] the cited authority in [paragraph 5] demonstrates that Plaintiff moved in August 2016, not September 2016 and mentions nothing about an ex-husband." (Doc. No. 34-1 n.1). Two footnotes later, Plaintiff challenges the statement that "Plaintiff had no knowledge of why [her fiancé] was in prison or when he would get out," and argues that she "never testified she did not know when he would get out." (Id. n.3).

In determining Plaintiff's employment claims, the Court has no need to know, because it is neither relevant nor material that Plaintiff is divorced, why she decided to move to Crossville, or whether she worked at CoLinx or Quality Service for a brief period before being hired by Defendant. Nor does it appear relevant or material that Plaintiff moved in September rather than August, or whether she really knows when her fiancé is to be (or was) released from jail. These may be just interesting tidbits, or perhaps these are merely misguided attempts to undermine Plaintiff's or counsels' credibility. Of course, Plaintiff's credibility is not for the Court to determine on summary

4

judgment. <u>Strickland v. City of Detroit</u>, 995 F.3d 495, 513 (6th Cir. 2021). Neither is counsel's for that matter because he or she is presumed to be aware of the requirements of the Federal Rules of Civil Procedure, including Rule 11(b)(3) that requires factual contention to have evidentiary support and Rule 11(b)(2) that requires legal contentions to be supported and nonfrivolous.

Because all of the facts discussed thus far are not material to the question at hand, *i.e.* whether Defendant has established that it is entitled to judgment on one or more of Plaintiff's race-based claims, the Court could simply ignore them and move on. But there is more.

Plaintiff's response to Defendant's statement of facts also contains repeated assertions to the effect of "[t]he cited authority demonstrates [x,y,z]"; "the cited authority states nothing about [x,y,z,]"; "defendant cites no authority"; "the cited authority does not support the statement"; "the cited authority does not fully support the statement"; "the cited authority does not reference"; "the cited authority contains no reference"; "the cited authority does not discuss"; "the cited authority does not mention"; "the cited authority does not support the second half of the statement"; "the cited authority does not support the statement and inferences made"; "the cited authority misquotes the witness"; "Defendant misrepresents the cited authority"; "the statement misrepresents the cited authority," and the like. (<u>See e.g.</u>, Doc. No. 34-1 nos. 4, 5-7,10, 11, 13, 14, 16, 17, 19, 25, 26, 44, 46, 51, 54, 58).

Conceivably, the Court could, if it chose to do so, dive into the record and examine each statement to determine if it says what Defendant claims, whether it supports the statement, and/or whether the citation is even correct. Through that exercise, the Court might even discover wherein the truth may lie. But that is not the Court's task. Courts "are not like pigs, 'hunting for truffles' that might be buried in the record," <u>Emerson v. Novartis Pharms. Corp.</u>, 446 F. App'x 733, 736 (6th

Cir. 2011), nor are they "gold prospector[s] looking for nuggets supporting [a] claim," <u>Finley v. Kelly</u>, 384 F. Supp. 3d 898, 908 (M.D. Tenn. 2019). Instead, the Federal Rules and this Court's Local Rules place that burden squarely on the parties who move for or oppose summary judgement. Fed. R. Civ. P. 56(c); L.R. 56.01. Either the parties do not read things the same way, or someone is misrepresenting the record. The latter, of course, is unacceptable.

The last – but not least – hurdle is Plaintiff's own statement of material facts and Defendant's response thereto. Plaintiff's factual recitation is replete with subjective beliefs, opinions and/or conclusions. In response, Defendant asserts as much but then, in another first for the Court, states that, "solely for the purposes of the summary judgment proceeding, the statement is undisputed." This is surprising and problematic.

To set the stage, Plaintiff is a Black female who went to work at Defendant Crossville, Inc. on October 30, 2016. Defendant manufactures glass, ceramic, porcelain and natural stone. It has three plants in Crossville: Plants 1, 2, and 4.

Plaintiff was hired as a deco line operator in Plant 4, meaning that she was responsible for placing color and glaze on the tile. Her supervisor was Angelia Selk. Plaintiff claims she was the only Black employee who worked in Plant 4, and only one of two Black employees that Defendant had in the state of Tennessee out of a workforce of 300-350 employees.[3] (Doc. No. 32 at 1).

Against this backdrop, Plaintiff first alleges the following "facts" that Defendant does not dispute, except for asserting that the statements are a subjective belief, conclusory, and/or

---

[3] Even though it should be an undisputed fact, the racial composition of Defendant's Crossville employees is unclear. Plaintiff's assertions regarding race appear in her Memorandum in response, but these "facts" do not appear in her statement of facts. For its part, Defendant claims that it employs more than 700 people nationwide, 20% of whom are Black. Defendant also notes that only 2% of Crossville's population in 2018 was Black, but never indicates how many Black people it employed in Crossville.

6

immaterial:

> (1) When Plaintiff first met Selk, she was greeted with a "sarcastic smile" and looked at in a "deprecating way."

> (2) When Plaintiff was first taken on a tour of the plant, "all of the workers just stopped what they were doing and stared" at her.

> (3) Plaintiff was supposed to be trained by Caitlin Haston, a co-worker, but Haston did not want to help her. In fact, when Plaintiff looked at her, Haston "would have a nasty look on her face, like Plaintiff disgusted her."

> (4) When asked if Plaintiff did something wrong or whether she was doing her job correctly, Haston would sarcastically say, "Oh yeah you did it right."

> (5) When Plaintiff had a problem with the machine on her line both her trainer (Haston) and her supervisor (Selk) "looked over at her with smirks on their faces and a look of disgust." They did not help Plaintiff, but instead "gave [her] a scornful look and walked off."

(Doc. No. 37 ¶¶ 1-9, 11). Whether the treatment Plaintiff received was based upon race, whether Plaintiff was overly-sensitive, or even whether these events actually happened, the Court has no way of knowing. What the Court does know, however, is that – subject to the objections already mentioned – Defendant admits (for summary judgment only) that "[t]hese actions were hurtful to Plaintiff because she was doing the best job she could and it was obvious that their looks of disgust *were not related to her work but to the fact that she is black*." (Doc. No. 37, SOF ¶¶ 37) (emphasis added).

The Court recognizes that this admission and others as well were, more likely than not, because Defendant placed all of its eggs in one basket. It may very well be that Plaintiff was not constructively discharged as a matter of law, but the Court cannot make that determination based upon the convoluted way the facts have been presented. Having already spent more time than should have been necessary and still unclear as to the facts, the Court will deny summary judgment and let

the jury sort out Plaintiff's race-based claims.

In allowing Plaintiff's discrimination claim to proceed to trial, the Court notes that it sees any number of reasons why Plaintiff might not even survive a motion for a directed verdict. So far as the Court can tell, during her two years of employment with Defendant, Plaintiff was tardy, left early, or was absent on numerous occasion, including, remarkably, arriving more than 1½ hours late the first day of her employment. Further, it appears that Plaintiff can identify only two inappropriate race-based statements involving a single co-worker, and Plaintiff may have complained to her supervisors about race being a factor on only one occasion. Trial for Defendant might not be a walk in the park either, given that Plaintiff may have been the only Black employee at Plant 4, and her allegations that she was shunned and treated differently from start to finish for no other reason than her race. To avoid what may ultimately turn out to be a waste of everybody's time, the Court will order the parties to mediation before trial if they are unable to reach a settlement on their own.

## II.

As stated at the outset, Plaintiff's FMLA interference claim[4] presents its own set of problems. Even so, it is clear that summary judgment is warranted on this claim.

As background, after Plaintiff became eligible for FMLA leave, she was 2½ hours late on October 14, 2018, and tardy by 1 hour two days later. Because of these infractions and also because she had allegedly threatened a co-worker, Plaintiff met with John Pauley, the Plant Manager, and Teresa Hamilton, Human Resources Coordinator later that month. According to those two individuals, Plaintiff said she was late because of personal issues, and clinic records for Plaintiff

---

[4] Plaintiff has withdrawn her FMLA retaliation claim, leaving only an interference claim. (Doc. No. 32 at 21, n.6).

showed that she was not seen on either of the dates in question.

In response, Plaintiff argues:

Defendant asserts Plaintiff's claim must fail because a review of clinic records does not demonstrate treatment dates consistent with the dates Plaintiff was tardy. However, that simply demonstrates that there is a dispute of fact between the parties as to whether and when treatment occurred, requiring denial of Defendant's motion. These records relate to medical practices that have changed names, permanently closed or been assumed by other entities. [Palmer Dec., ¶¶ 6-13]. Accordingly, the existence of some discrepancies is not surprising. However, these are simply more issues of fact to be decided by a jury, demonstrating the impropriety of this motion.

(Doc. No. 32 at 22) (brackets in original).

In yet another first for the Court, counsel has inserted herself as a fact witness in an effort to avoid summary judgment being entered against her client. The referenced declaration comes from Plaintiff's counsel who avers that:

6. I have made numerous attempts over the course of several months to obtain Plaintiff's medical records from various medical providers.

7. Specifically, I have done research regarding the practices at which Plaintiff has received ongoing treatment since her scoliosis surgery in 1999, some of which overlapped one another.

8. Some of the practices from which Plaintiff received treatment have closed down, been dissolved, or been taken over by another practice.

9. To date I have sent at least 10 authorizations to various medical providers and have received minimal medical records in response.

10. I have been unable to obtain medical records from Plaintiff's treatment in 2017 and 2018 with the entity I believe to be Advanced Spine & Pain, previously located in Crossville, TN.

11. Advanced Spine, Pain and Nerve currently located in Crossville, TN is a different entity with a different owner. Per my conversations with that office, none of the medical providers from the previous entity called Advanced Spine & Pain are part of Advanced Spine, Pain and Nerve.

9

12. Advanced Spine, Pain and Nerve does not have any medical records for any former patients of Advance[,] Spine & Pain, and has no knowledge of how to obtain them.

Doc. No. 32-3, ¶¶ 6-12).

Rule 56 requires that affidavits or declarations "set out facts that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4). How Ms. Palmer, who is Plaintiff's only counsel of record, intends to introduce these facts at trial is unclear and doubtful. Regardless, whether counsel was able to secure the medical records says nothing about whether Plaintiff told Pauley or Hamilton that she was late because of medical appointments.

Nor will the Court chalk this up to a "he said, she said" dispute, notwithstanding Plaintiff's deposition testimony that she thought one of her tardies was because of a doctor's appointment in Nashville. (Doc. No. 32-4, Pf. Depo. at 182). Plaintiff used her phone to surreptitiously record her conversation with Pauley and Hamilton, and a transcript of that recording has been filed. This Court's review of that entire transcript (because specific page citations were not provided) indicates that, at least on two occasions, Plaintiff told Pauley and Hamilton that she was tardy for personal reasons and had a lot of "things" or "stuff" going on. (Doc. No. 27-5 at 4, 16) At no point does she reference a doctor's appointment or medical treatment, nor does Plaintiff claim that she previously informed Defendant she would be late for work on either of the two days. As a consequence, Plaintiff cannot show that she gave Defendant notice of her intent to take leave, or that Defendant denied her FMLA leave to which she was entitled. Both are essential elements of an interference claim, Wysong v. Dow Chem. Co., 503 F.3d 441, 447 (6th Cir. 2007), and, without them, her FMLA claim fails.

**III.**

10

Based on the foregoing, the Court will deny Defendant's Motion for Summary Judgment on Plaintiff's race-based claims, albeit with many reservations. The Court will grant summary judgment on Plaintiff's FMLA interference claim.

An appropriate Order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE